# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 7, 2005　　　　Decided November 22, 2005

No. 04-1073

SABRE, INC.,
PETITIONER

v.

DEPARTMENT OF TRANSPORTATION AND
NORMAN Y. MINETA, SECRETARY OF TRANSPORTATION,
RESPONDENTS

AMADEUS GLOBAL TRAVEL DISTRIBUTION, S.A.,
INTERVENOR

---

On Petition for Review of an Order of the
United States Department of Transportation

---

*David C. Frederick* argued the cause for petitioner. On the briefs were *Kenneth P. Quinn, Richard Liebeskind, Barry H. Gottfried, Jennifer Trock,* and *David A. Schwarte.*

*Sam Kazman* and *Randolph J. May* were on the brief for *amici curiae* The Progress & Freedom Foundation, et al.

*Paul M. Ruden* was on the brief for *amicus curiae* American Society of Travel Agents.

*Thomas L. Ray*, Senior Trial Attorney, U.S. Department of Transportation, argued the cause for respondents. With him on the brief were *Robert H. Pate*, Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson* and *Steven J. Mintz*, Attorneys, *Jeffrey A. Rosen*, General Counsel, U.S. Department of Transportation, *Paul M. Geier*, Assistant General Counsel, and *Dale C. Andrews*, Deputy Assistant General Counsel.

*David H. Coburn* argued the cause for intervenor Amadeus Global Travel Distribution, S.A. in support of respondents.

Before: ROGERS and BROWN, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Sabre, Inc. petitions for review of a final rule promulgated by the Department of Transportation that, as relevant, states that an independent computer reservation system ("CRS") not owned by an air carrier or foreign air carrier is a "ticket agent" as defined within the Federal Aviation Act ("FAA"), 49 U.S.C. § 40102(a)(45) (2000 and West Supp. 2005), and therefore subject to the regulatory authority of the Department under FAA section 411, 49 U.S.C. § 41712(a). *See* Computer Reservations System Regulations, 69 Fed. Reg. 976, 995-98 (January 7, 2004) ("Final Rule"). Sabre, an independent CRS unconnected to an airline, contends that it is not a statutory "ticket agent" and asks that those portions of the Final Rule in which the Department asserts the authority to regulate independent CRSs under section 411 be set aside. The Department responds that the petition should be dismissed because Sabre has suffered no injury in fact and therefore lacks standing, and its pre-enforcement challenge to the Department's interpretation of its authority is not ripe. Alternatively, the Department maintains that its interpretation of the statutory

definition, and hence of its authority under section 411, is consistent with the plain language of the definition or, in any event, is reasonable.

Although no regulations promulgated by the Department currently constrain Sabre's business activity and no relevant enforcement actions are pending against any independent CRS, we hold that Sabre has standing in view of the combination of three circumstances. In the Final Rule, the Department claims that it has jurisdiction over independent CRSs under section 411; its statements indicate a very high probability that it will act against a practice that Sabre would otherwise find financially attractive; and it has statutory authority to impose daily civil penalties on Sabre for violation of section 411, which the Department plausibly asserts it may enforce without prior warning by rulemaking or cease-and-desist order. We also hold that Sabre's challenge to the Department's interpretation of its authority under section 411 is fit for review based on undisputed facts, including the risk of incurring civil penalties should Sabre proceed to implement certain marketing plans. We conclude, however, that Sabre's challenge to the Department's interpretation of its authority under section 411 lacks merit. Accordingly, we deny the petition.

**I.**

Section 411 of the FAA provides:

On the initiative of the Secretary of Transportation or the complaint of an air carrier, foreign air carrier, or ticket agent, and if the Secretary considers it is in the public interest, the Secretary may investigate and decide whether an air carrier, foreign air carrier, or *ticket agent* has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air

transportation. If the Secretary, after notice and an opportunity for a hearing, finds that an air carrier, foreign air carrier, or *ticket agent* is engaged in an unfair or deceptive practice or unfair method of competition, the Secretary shall order the air carrier, foreign air carrier, or *ticket agent* to stop the practice or method.

49 U.S.C. § 41712(a) (emphases added). The term "ticket agent" is defined as

> a person (except an air carrier, a foreign air carrier, or an employee of an air carrier or foreign air carrier) that as a principal or agent sells, offers for sale, negotiates for, or holds itself out as selling, providing, or arranging for, air transportation.

*Id.* § 40102(a)(45). Upon finding a violation of section 411, the Department may impose civil penalties. *Id*. § 46301(a)(1)(A), (a)(2), (a)(5)(D), & (c).

In 2004, in the Final Rule, the Department removed the rules that had long governed the CRS industry. Concluding that "market forces are beginning to discipline the [CRS]s' prices and terms for airline participation" and that "the [CRS]s' competition for subscribers is in large part eliminating contract provisions that substantially restrict travel agents from using alternative electronic sources of airline information and booking capabilities," Final Rule, 69 Fed. Reg. at 985, the Department allowed the sunset on January 31, 2004 of its CRS regulations. *Id.* at 976. Two of its rules — prohibiting "display bias"[1] and

---

[1] Display bias involves the ability of a CRS to affect the presentation of information in ways that are not readily apparent to the user, which, in the Department's view, prejudices airline competition and causes travel agents to give misleading or incomplete advice to

certain contractual arrangements — were extended for a six-month transition period beyond the sunset date, until July 31, 2004. *Id.* (codified at 14 C.F.R. § 255.8 (2005)). In promulgating the Final Rule, the Department stated that all CRSs remain subject to Department authority under section 411. *Id.* Specifically, even those CRSs that are not owned by statutory "air carriers" (i.e., "independent CRSs") are deemed statutory "ticket agent[s]," and thus remain the subject of possible Department enforcement actions under section 411. *Id.* at 995-998.

## II.

Sabre petitions for review of the Department's jurisdictional claim in the Final Rule and vacation of that part of the rule. Sabre contends that the Department's "novel interpretation" that independent CRSs are "ticket agents" ignores both the plain meaning of the statutory definition of "ticket agent" and its own prior interpretation of that term and rewrites Congress's purpose in 1952 when it included "ticket agent[s]" in the scope of section

their customers. 69 Fed. Reg. at 992, 998. The user sees the CRS's presentation but does not necessarily grasp the criteria that have influenced the presentation, such as payments by airlines. The Department explained:

> Display bias is possible because of the way in which [CRSs] present information on airline service options. [CRSs] display information on computer screens. Each screen can display only a limited number of [airline] flights, so a system must use criteria for ranking the available flights. Display position is important, because travel agents are more likely to book the flights that are displayed first.

*Id.*; *cf. United Air Lines, Inc. v. Civil Aeronautics Board*, 766 F.2d 1107, 1110 (7th Cir. 1985).

411. Before reaching Sabre's challenge to the Department's interpretation of its authority under section 411, we must first address the Department's contentions that Sabre lacks standing and that its challenge is not ripe. *See Steel Co. v. Citizens for a Better Env"t*, 523 U.S. 83, 94-95 (1998). The Department contends that Sabre lacks standing because Sabre cannot show that the Department's conclusion that independent CRSs are "ticket agent[s]" for purposes of section 411 will cause Sabre actual or imminent injury, and further that the validity of the Department's statutory interpretation is not ripe for review because no Department rule now restricts Sabre's business operations.

**A.**

Article III of the Constitution limits the role of the federal courts to decide "cases" and "controversies." U.S. Const. art. III, § 2. To ensure there is a justiciable dispute, Sabre must demonstrate standing, by showing that (1) it has suffered an "injury in fact," that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the Department; and (3) a favorable decision on the judicial relief requested is likely to redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Only injury in fact is in dispute.

The Department takes the position that Sabre offers only speculation as to whether and how the Department might in the future regulate independent CRSs under section 411, which the Department contends is "completely unknown and cannot constitute a present injury for standing purposes." Br. of Respondent at 21-22. The Department maintains that no relevant legal obligations continue to bind Sabre because it is unreasonable to assume that the Department would seek to

enforce regulations, such as the prohibition on display bias, that the Department has specifically allowed to sunset.  If the Department considered such practices to violate section 411 in all instances, the Department maintains that it would have preserved or modified these prohibitions.  *Id.* at 22-23.  Sabre is thus, according to the Department, "free to operate its business as it wishes."  *Id.* at 26.

We conclude that Sabre has demonstrated a sufficiently concrete and particularized injury in fact due to the Final Rule's immediate impact on Sabre's ability to make business decisions about the products it will offer in the market.  This comes about as the result of a combination of three circumstances:

First, in the Final Rule, the Department unambiguously claims jurisdiction over independent CRSs.  It stated that it will continue to take "appropriate action[s]" under section 411 against deceptive trade practices and unfair methods of competition by CRSs, irrespective of whether the CRS is connected through ownership with an air carrier.  Final Rule, 69 Fed. Reg. at 991, 998.  At oral argument, the Department acknowledged that its claim of jurisdiction in the Final Rule is definitive, not tentative.

Second, the Department's statements, taken as a whole, indicate a very high probability that it will act against a practice that Sabre would otherwise find financially attractive, namely the sale of display bias. In the Final Rule, the Department has made clear that it strongly condemns display bias while giving no indication of how the practice would ever be lawful. Specifically, the Department considers the sale of display bias to be categorically anti-competitive and unfair, at least under current market conditions.  *Id*. at 992, 998. It rejects arguments that display bias may have social benefits, *id*. at 993, and that display bias may not be harmful, *id*. at 992-94.  Although the

Department offers some indications that future market conditions might cause the sale of display bias to become less pernicious, *id*., it offers only oblique indications of how that might be the case, such as when travel agents use the internet to check the quality of CRS information, *id.* at 993, and no indication of how it might become beneficial. "Display bias does not promote competition on the merits," the Department explains, because "[i]nstead, it is designed to suppress competition by causing consumers and their travel agents to select inferior airline services over other available services that would better suit their needs." *Id.* at 998; *see supra* n.1. Thus, the Department concludes, depending upon market conditions, CRS biasing may be "unlawful" both under section 411 as well as section 1 of the Sherman Act, 15 U.S.C. § 1 (2000). Final Rule, 69 Fed. Reg. at 998. These statements occur in the context of the Department's assertion that "display bias has been a concern since CRSs were first developed," *id.* at 992, and that CRSs "clearly wish to be able to sell bias," *id.* at 993.

Third, the Department has the statutory authority to impose daily civil penalties on Sabre, after notice and an opportunity to be heard, for violations of section 411 and has asserted, subject only to the limits of constitutional Due Process, the right to do so without prior warning, rulemaking, or cease and desist order. *See* 49 U.S.C. § 46301(a)(2), (a)(4), (c)(1)(A). Although the Department's history of enforcement actions has been premised on regulatory violations,[2] and the Final Rule suggests that the

---

[2] *See, e.g.*, *TFI Tours International, Ltd. Violations of 49 U.S.C. § 41712 and 14 CFR 399.84*, Order 2004-2-5, 2004 WL 253318 (D.O.T. Feb. 6, 2004); *Cheap Tickets, Inc. Violations of 49 U.S.C. § 41712 and 14 CFR 399.84*, Order 2002-5-30, 2002 WL 32341086, at *3 (D.O.T. May 31, 2002); *Travelocity.com, L.P. Violations of 49 U.S.C. § 41712 and 14 CFR 399.84,* Order 2002-3-28, 2002 WL 32341082, at *2 (D.O.T. Mar. 29, 2002); *Expedia, Inc. Violations of 49 U.S.C. § 41712 and 14 CFR 399.84,*

Department might readopt regulations barring display bias, 69 Fed. Reg. at 998, the Department asserted in the Final Rule that regardless:

> [e]ven without specific regulations, any such [anti-competitive] practices could be unfair methods of competition and thus unlawful. We retain the authority to bring enforcement cases against firms that violate the statutory prohibition.

*Id*. at 978. As Sabre points out, the Department has taken the position in another context that, as a matter of its statutory authority, "a violation of [section 411] may be enforced by civil penalty as well as by order." *American Airlines, Inc.*, Docket OST-2003-15046-18, 2003 WL 23097500, *3 (D.O.T. Aug. 21, 2003).

In light of the Final Rule's pronouncements, Sabre realistically expects that its marketing of display bias will be perceived by the Department as a violation of section 411. *Cf. Clinton v. City of New York*, 524 U.S. 417, 432 (1998). In this context, the declaration in the Final Rule that independent CRSs are "ticket agents" has immediate, unavoidable implications for Sabre's business choices and investments, which constitutes a sufficiently distinct and palpable injury.

In addition, Sabre has established that this injury is actual, not conjectural or hypothetical. Sabre has proffered evidence in a sealed supplemental declaration that confirms the present existence of marketing plans, which it could otherwise implement presumably at considerable profit, that might very

---

Order 2001-12-1, 2001 WL 34371079 (D.O.T. Dec. 3, 2001); *Delta Air Lines Violations of 49 U.S.C. § 41712 and 14 CFR 399.84,* Order 97-7-24, 1997 WL 411646 (D.O.T. July 24, 1997).

well result in enforcement actions and consequent civil fines. The Final Rule does not entail the type of flat prohibition involved in *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), and the threat of future readoption of regulations prescribing display bias is insufficient to show injury, *see La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1383-84 (D.C. Cir. 1996). However, the Department's interpretation of section 411 to cover independent CRSs, combined with a high probability of adverse government action and exposure to the risk of penalty without further advance warning, shapes the competitive environment in the air transport industry by restricting the willingness of independent CRSs to engage, notwithstanding deregulation, in certain practices, which may plausibly be otherwise lawful.

We hold, under these circumstances, that Sabre has demonstrated, as a consequence of the Final Rule and its status as an independent CRS, a "sufficient likelihood of economic injury to establish standing." *Clinton*, 524 U.S. at 432; *Shays v. FEC*, 414 F.3d 76, 85-86 (D.C. Cir. 2005); *cf. Laidlaw Envtl. Servs.*, 528 U.S. at 183-84. It is reasonably certain that Sabre's business decisions will be affected, *see Becker v. FEC*, 230 F.3d 381, 387 (1st Cir. 2000); Kenneth Culp Davis & Richard J. Pierce, Jr., ADMINISTRATIVE LAW TREATISE § 16.4, at 13-14 (3d ed. 1994), which makes the Department's claim of section 411 authority over independent CRSs analogous to the adoption of a general enforcement policy immediately affecting Sabre and so subject to review. *Cf. OSG Bulk Ships v. United States*, 132 F.3d 808, 812 (D.C. Cir. 1998).

Finally, Sabre's petition, which is a challenge to an administrative rulemaking, falls within the relevant zone of interests under the Administrative Procedure Act, 5 U.S.C. § 702 (2000), and the FAA, and therefore satisfies the prudential limitations on standing. *See Bennett v. Spear*, 520 U.S. 154,

162-64 (1997).

**B**.

A related component of justiciability in pre-enforcement review of agency action focuses on the timing of judicial review rather than the parties seeking review. The ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). Determining whether administrative action is ripe for judicial review requires a court to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Id.* at 149. This court has long understood the approach in *Abbott Labs.* to incorporate a presumption of reviewability. *See Nat'l Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689, 694 (D.C. Cir. 1971). Thus, the court has "often observed that a purely legal claim in the context of a facial challenge, such as [Sabre's jurisdictional] claim, is 'presumptively reviewable.'" *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1282 (D.C. Cir. 2005) (quoting *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752, 757 (D.C. Cir. 2003)); *see Nat'l Automatic Laundry*, 443 F.2d at 695. At the same time, a purely legal claim may be less fit for judicial resolution when it is clear that a later as-applied challenge will present the court with a richer and more informative factual record. *See Nat'l Park Hospitality Ass. v. Dept. of the Interior*, 538 U.S. 803, 812 (2003); *At'l. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003).

Regarding the first prong of the ripeness analysis, Sabre's challenge to the Department's interpretation of its authority

under section 411 presents the court with a purely legal question of statutory construction. *See Abbott Labs.*, 387 U.S. at 149. The imposition of section 411 liability creates "adverse effects of a strictly legal kind," *Ohio Forestry Ass'n., Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998), and so affects Sabre's primary conduct. *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967). The specific and generally uncontested factual observations of the Department in the Final Rule — especially those concerning the ownership, history, and contracting practices of the CRS systems used to market and sell airline transportation, *see, e.g.*, Final Rule, 69 Fed Reg. at 979-83, 990-91 — are sufficient to inform the court of the contours of a merits decision and further factual development in an as applied context, for example, would not provide the court with a significantly richer record.

As regards the second prong of the analysis, while the court recognizes the possibility of overlap between the injury-in-fact for purposes of standing and the hardship prong for purposes of ripeness, *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997); *see also Venetian Casino Resort, L.L.C. v. EEOC*, 409 F.3d 359, 366 (D.C. Cir. 2005); *Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4, 11 (1st Cir. 2000), the court has — in accordance with the presumption of reviewability — repeatedly held that absent institutional interests favoring the postponement of review, a petitioner need not show that delay would impose individual hardship to show ripeness, *see Home Builders*, 417 F.3d at 1282; *AT&T Corp. v. FCC*, 349 F.3d 692, 700 (D.C. Cir. 2003). The Department has failed to offer plausible reasons why it has an institutional interest in postponing review. It refers only generally to the public interest and judicial economy. Contrary to the Department's view, postponing review does not advance the policy of "protecting courts from adjudicating matters that in fact make no difference and are a waste of [the court's] resources." *Amer. Trucking*

*Ass'ns, Inc. v. ICC*, 747 F.2d 787, 789-90 (D.C. Cir. 1984). Sabre must at present conform its primary conduct to the Department's interpretation of "deceptive" and "unfair" or risk civil penalties. *See Home Builders*, 417 F.3d at 1283; *Nat'l Automatic Laundry*, 443 F.2d at 695; *cf. supra* Part II.A. The Department and intervenor Amadeus Global Travel Distribution, S.A., overread Sabre's statements in its filings with the Securities and Exchange Commission; those filings acknowledge only that deregulation under the Final Rule affords Sabre "increased flexibility to construct our displays of airlines services in new ways," Sabre Holdings Corp., Form 10-K: Annual Report 10 (Dec. 31, 2003), as distinct from suggesting that Sabre is not experiencing any burden on its primary conduct as a consequence of the Final Rule. Although the Department stated at oral argument that it would have to make new finding of market conditions before it could conclude a practice violated section 411, it did not dispute that, as in a typical antitrust case, it could make an after-the-fact finding of market conditions.

From the court's perspective, pre-enforcement review of jurisdictional challenges serves a distinct purpose. "In our overall pattern of government the judicial branch has the function of requiring the executive (or administrative) branch to stay within the limits prescribed by the legislative branch." *Nat'l Automatic Laundry*, 443 F.2d at 695. Unlike the challenge in *National Park* to an agency's interpretation of a statute it did not administer, 538 U.S. at 807, where the Court seemed to find the regulation's impact murky and remote, *id.* at 810, and concluded that consideration of the merits was premature in light of possible permissible applications of the agency's interpretation, *id.* at 812, Sabre presents a facial jurisdictional challenge to the Department's interpretation of statute that the Department is charged with administering, and the impact of the Final Rule on Sabre's business strategy seems clear and relatively imminent. *Cf. Abbott Labs.*, 387 U.S. at 154.

Although Sabre remains subject to the authority of the Federal Trade Commission to regulate unfair and deceptive trade practices, 15 U.S.C. § 45 (2000), the Commission's authority is not necessarily similar in scope to that of the Department, *see United Air Lines v. Civil Aeronautics Bd.*, 766 F.2d 1107, 1112 (7th Cir. 1985) (citing Magnuson-Moss Act of 1975 and the Federal Trade Commission Improvements Act of 1980); H.R. Rep. No. 98-793, at 5 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 2857, 2861, and the Department has a distinct viewpoint and policy agenda with regard to display bias in policing anti-competitive, deceptive, and unfair practices in the air transportation industry.

Therefore, because the Department's jurisdictional claim is sufficiently crystalized for judicial review and neither the Department nor the court has a significant interest in delay, we hold that Sabre's challenge to the Department's claim of section 411 jurisdiction over independent CRSs is ripe.

### III.

In the Final Rule, the Department observed that in adding the term "ticket agent" in section 411 Congress intended the definitional phrase "as principal or agent" to ensure that all persons conducting the listed functions were covered, and concluded that independent CRSs operate as principals in the offering for sale and arranging for air transportation inasmuch as "they act as independent firms that are involved in the distribution of airline services." 69 Fed. Reg. at 996. It followed that because the independent CRSs are "ticket agent[s]," the Department has authority over them under section 411. *Id.* at 998.

Sabre contends that the Department's identification of independent CRSs as statutory "ticket agents" is invalid because this interpretation is incompatible with the plain language of the

statute. Maintaining that independent CRSs do not act as "principals" in arranging for air transportation, nor are they authorized "agents" of air carriers, Sabre revives the contention rejected in the Final Rule that independent CRSs are simply information intermediaries who provide fare, route, and seat availability data to travel agents, who then book and sell tickets. *Id*. at 996. According to Sabre, the legislative history indicates that Congress was concerned only with regulating as principals "ticket agents" who held themselves out to the public as air carriers and misrepresented themselves in the fraudulent sale of air transportation, and this meaning is reflected in precedent of the Civil Aeronautics Board ("CAB"), which is the Department's predecessor in this regulatory arena, *see* Civil Aeronautics Board Sunset Act of 1984, Pub. L. 98-443, 98 Stat. 1703 (1984).

Under the familiar two-step analysis of *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842-45 (1984), if the statutory language is clear, "the court must give effect to the unambiguously expressed intent of Congress," *id.* at 842-43. If the court concludes the statutory language is silent or ambiguous, then, under the second step, the court must sustain the Department's interpretation of a statute it administers, as developed in a rulemaking, if it is "based on a permissible construction of the statute." *Id*. at 843. Whether the Department is correct in urging that its interpretation of "ticket agents" is consistent with the literal terms of the statute, there can be no serious argument that the Department's interpretation is impermissible. Neither the plain language of the statute, nor the holding of any court, nor any unexplained change in agency precedent prohibit the Department's interpretation. The fact that Congress may not have foreseen current developments in the CRS industry does not demonstrate, as Sabre implies, that the Department's construction is invalid. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998); *Chevron*,

467 U.S. at 843-44; *cf. Barnhart v. Walton*, 535 U.S. 212, 220 (2000).

There are three conditions compounded in the definition of "ticket agent." A statutory "ticket agent" is a "person" who, (1) either "as a principal or agent," (2) "sells, offers for sale, negotiates for, or holds itself out as selling, providing, or arranging for," (3) air transportation. 49 U.S.C. § 40102(a)(45). The Department reasoned, citing the common meaning of "sell" and "offer," that CRSs sell and offer for sale air transportation as principals because they "present the travel agent with air service options that the agent can purchase through the system"; each system "enables the travel agent to book the seat and pay for it on the customer's behalf by entering specified keystrokes"; and when the travel agent follows the applicable procedures, "the airline is obligated by its contract [with the system] to accept the booking as valid, whether or not any record of the transaction appears in the airline's internal reservations system." Final Rule, 69 Fed. Reg. at 996.

Sabre maintains that by construing "ticket agent" to reach independent CRSs, the Department's interpretation reads out of the definition the restrictive clause "as a principal or agent," because the term "ticket agent" under the Department's interpretation covers all parties involved in selling, offering for sale, or arranging for air transportation, no matter what status they have or tasks they perform. This is not true: Congress's use of "principal" and "agent" in the disjunctive does not necessarily indicate that Congress intended to limit the broad applicability of the two words. Legislative drafters often use apparently redundant language in order to emphasize that a broad delegation may not evaded so as to frustrate a statute's purpose. *Cf. Shook v. District of Columbia Fin. Responsibility and Mgmt. Assistance Auth.*, 132 F.3d 775, 782 (D.C. Cir. 1998). The legislative history illustrates these points and also undercuts any force in Sabre's attempt to limit the meaning of "principal" or

"agent" to agency law. Congress was concerned about deceptive sales practices by entities that were not already subject to federal regulation, *see* H.R. Rep. 82-2420, *as reprinted in* 1952 U.S.C.C.A.N. 2158, at 2162-63, and that were neither air carriers nor the fiduciary agents of either carriers or travel customers, but which presented themselves either as the merchants or brokers of travel services, or as carriers themselves, *see id.* at 2158-59. Rather than suggesting that Congress had agency law in mind when it amended section 411 to add the term "ticket agent," the history indicates that Congress used both "principal" and "agent" in order to cover all intermediary entities that hold themselves out as "selling, providing, or arranging for air transportation." *Id*. at 2158-63. Thus, the Department could permissibly identify an independent CRS as a "principal or agent" in the broad sense of a travel intermediary.

Although Sabre protests that it is not selling air transportation but only selling "information, communications, and data processing" to airlines and travel agents, Br. of Petitioner at 27, the Department also could reasonably conclude the independent CRSs do more. Final Rule, 69 Fed. Reg. 996. As Intervenor Amadeus points out, CRS contracts with airlines "authorize CRSs to display their services for sale, confirm reservations, price itineraries, accept payment information, process credit cards authorizations, provide e-ticketing information, and physically issue tickets on their behalf." Amadeus Reply Comments at 34-35, *In the Matter of CRS Regulations; Statements of General Policy*, Docket No. OST-97-2881 *et al.* (D.O.T. June 9, 2003). Most significantly, CRSs are not paid for providing information but for making bookings, i.e, for selling airline inventory. American West Comments at 12, *In the Matter of CRS Regulations; Statements of General Policy*, Docket No. OST-97-2881 *et al.* (D.O.T. March 17, 2003). Most of the CRSs' revenues come from payments made by airlines for individual bookings. *See* Notice of Proposed Rulemaking

("NPRM"), 65 Fed. Reg. 45,552, at 69,370 (2000); Final Rule, 69 Fed. Reg. at 995. In addition, under productivity pricing arrangements between CRSs and many travel agencies, the latter obtain incentive payments from the CRS (or pay penalties) based on meeting (or not) a monthly booking quota. *Id*. at 997. The CRSs also charge airlines for booking records made by travel agents that do not involve any communication with an airline's internal reservation system. NPRM, 65 Fed. Reg. at 69,400; Final Rule, 69 Fed. Reg. at 997.

Because the statutory definition does not require that a ticket agent offer to sell air transportation directly to the public, *id*. at 996, the Department could reasonably conclude that Sabre's offerings to travel agencies satisfy the holding-out requirement, *see United Air Lines,* 766 F.2d at 1113 (citing *Great Lakes Airlines v. United Overseas Airlines,* 34 C.A.B. 59, 61, n.7 (1961)); Carrier-Owned Computer Reservations Systems, 49 Fed. Reg. 32,540, at 32,548 (Aug. 15, 1984). Also, the Department could reasonably characterize travel agents as agents for their traveling customers, not just as the agents of air carriers. Travel agents not only follow their traveling customer's directions in booking airline tickets, they obtain much of their compensation from their customers, not from airlines. *See, e.g.*, National Comm'n to Ensure Consumer Information and Choice in the Airline Industry, *Upheaval in Travel Distribution: Impact on Consumers and Agents* at 22-24 (Nov. 13, 2002) (final report). Further, the Department did not unreasonably expand the meaning of "ticket agent" by equating "arrange" with "enable," but, in interpreting the definition, it placed limits on the entities covered in terms of the activities that Congress listed. The Department expressly avoided claiming jurisdiction over firms that provide only information on airline services, Final Rule, 69 Fed. Reg. 996, or firms that provide a link to sites where bookings could be made but do not provide a booking function and charged no airline fees, *id*. at 1002. Sabre's position that independent CRSs are like

newspapers, which provide a forum and marketplace for sales and purchases of goods and services, ignores that newspapers neither sell the merchandise they advertise nor charge their readers or advertisers fees when a reader makes a purchase as a result of a newspaper advertisement. An independent CRS, in contrast, obtains most of its revenue from fees imposed on airlines when a travel agent uses a CRS to make a booking.

Sabre's reliance on *United Air Lines* is unavailing. In that 1985 case, the Seventh Circuit observed that the CAB has no regulatory authority over independent CRSs not owned by airlines. *United Air Lines*, 766 F.2d at 1110. This was dictum; indeed, it was insignificant dictum. The issue of independent CRSs was not examined in that case, and the court's comment was in reference to a form of CRS that has now, in all probability, been superceded by new technologies and forms of business organization.

As to Sabre's contention that the Department's interpretation of the term "ticket agent" is contrary to agency precedent, it is true that the definition as now codified and the relevant language of section 411 have remained largely unchanged since 1952.[3] However, the nature of the CRS

---

[3] Section 411 was first enacted in 1938 and did not apply to "ticket agent[s]" but only to "air carrier[s]." See Civil Aeronautics Act of 1938, ch. 601, § 411, 52 Stat. 973, 1003 (1938). In 1952, Congress amended section 411 to prohibit unfair and deceptive trade practices by "ticket agent[s]." See An Act to Amend the Civil Aeronautics Act of 1938, Pub. L. No. 82-538, 66 Stat. 628 (1952). The current definition of "ticket agent" in 49 U.S.C. § 40102(a)(45) differs only in unimportant ways from the definition enacted in 1952, which read:

> "Ticket agent" means any person, not an air carrier or a foreign air carrier and not a bona fide employee of an air

industry has changed. When the CAB first promulgated rules to regulate CRSs in 1984, *see* Carrier-Owned Computer Reservations Systems, 49 Fed. Reg. 32540 (1984), all CRSs were controlled by air carriers, which were subject to regulation under section 411, Final Rule, 69 Fed. Reg. at 995. Today there are four CRSs operating in the United States. Three of these systems — Sabre, Galileo, and Worldspan — are not owned in any part by air carriers. Sabre was sold to public investors in 2000. *See* NPRM, 65 Fed. Reg. at 45,552. Amadeus, the forth CRS, is partially owned by foreign air carriers and has a relatively small share of the U.S. international travel market. *Id*. Sabre's CRS accounts for about one third of a typical airline's revenues. Final Rule, 69 Fed. Reg. at 987. In view of the significant changes in the industry, especially with regard to ownership and control over the major CRSs, prior CAB rulings provide no controlling guidance because they examined different questions and thus do not affect what is a straightforward question of statutory construction. For the same reason, Sabre's contention that the Department's interpretation of its authority under section 411 is an unexplained change in agency precedent is without merit. The agency precedent cited by Sabre — *Southeast Agency, Inc.*, 25 C.A.B. 89 (1957), and *Airline Reservations, Inc*., 18 C.A.B. 114 (1953) — held only that a firm that sold tickets while falsely holding itself out as an airline was a ticket agent acting in violation of section 411; these orders did not hold, nor suggest, that persons would be ticket

carrier or foreign air carrier, who, as principal or agent, sells or offers for sale any air transportation, or negotiates for, or holds himself out by solicitation, advertisement, or otherwise as one who sells, provides, furnishes, contracts or arranges for, such transportation.

Upon enacting the FAA in 1958, Congress repealed the 1938 Act but left section 411 unchanged. Pub. L. No. 85-726, §§ 101 & 411, 72 Stat. 731, 739-40, 769 (1958).

agents only if they misrepresented themselves as airlines.

Additionally, with the change in the nature of the CRS industry, the fact that the CAB acted when CRSs were owned by airline carriers does not mean the Department is now barred from interpreting section 411's broad delegation of authority in a manner reasonably consistent Congress's original intention, which was to curb deceptive and unfair practices in the air travel industry. The Supreme Court has repeatedly observed that "'the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'" *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001) (quoting *Yeskey*, 524 U.S. at 212). Thus, "statutes written in broad, sweeping language should be given broad, sweeping application," *Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 298 (D.C. Cir. 2003). While Congress may not have foreseen the ownership changes in the CRS industry, absent evidence that Congress would have objected to the Department's interpretation of the statute, the historical circumstances that led to enactment do not limit the permissible interpretations of the statutory language. *See New York v. FERC*, 535 U.S. 1, 23 (2002); *Am. Airlines v. Dep't. of Transp.*, 202 F.3d 788, 809 (5th Cir. 2000). The legislative history suggesting that Congress sought to bring all intermediaries involved in the sale of air transportation under federal administrative control rebuts Sabre's position that the Department's construction of "ticket agent" is an unreasonable accommodation that Congress would not have sanctioned. Congress did not define "ticket agent[s]" as persons who are travel agents, nor make the ability to issue a ticket the test of being a travel agent, but rather defined the words in terms of specific activities, i.e., persons selling air transportation, offering it for sale, or holding themselves out as selling or arranging for air transportation. That CRSs and travel agents conduct related but somewhat different functions in the distribution chain is, as the Department concluded, irrelevant.

Congress's focus was on deceptive sales and listed the functions that would bring an entity within federal regulatory control. Its definition of "ticket agent" was sufficiently broad to authorize the Department to interpret the definition to encompass changing ownership relationships. *Cf. Am. Airlines*, 202 F.3d at 809.

Accordingly, we hold that although the court has jurisdiction to address Sabre's petition because Sabre has standing and Sabre's preenforcement challenge to the Department's interpretation of its authority under section 411 is ripe, Sabre's challenge fails on the merits, and we deny the petition for review.