# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 7, 2024          Decided April 24, 2026

No. 23-5149

J. GREGORY SIDAK,
APPELLEE

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION, ET AL.,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cv-00325)

———

*Joshua M. Salzman*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, at the time the briefs were filed, and *Anna M. Stapleton*, Attorney.

*Christopher Landau* argued the cause and filed the brief for appellee. *Paul D. Clement* and *Andrew C. Lawrence* entered appearances.

Before: KATSAS, RAO, and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: The International Trade Commission unconstitutionally installed an administrative law judge. In an agency adjudication, he issued an order to protect trade secrets. The order covered an expert witness named Gregory Sidak. Years later, the ITC investigated Sidak for violating the protective order.

Sidak sued to enjoin the investigation. He argued that an unconstitutionally installed ALJ lacks the authority to issue a binding protective order. In response, the ITC argued that Sidak's suit was too early — and also too late.

The district court disagreed and enjoined the investigation.

We affirm.

## I. How We Got To Now

The Tariff Act of 1930 prohibits importers from engaging in unfair methods of competition and intellectual-property infringement. *See* 19 U.S.C. § 1337(a). The Act is enforced by the International Trade Commission. The ITC is a multi-member agency consisting of a chairman and five other commissioners. The six commissioners constitute the ITC's "Head." *See Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 512-13 (2010).

Beneath the commissioners sit administrative law judges. They review evidence and adjudicate violations of the Tariff Act, which can be appealed to the ITC. *See* 19 U.S.C. § 1335; 19 C.F.R. §§ 210.3, 210.10(b)(2)-(3), 210.42(a)(1)(i) & (h), 210.45. In doing so, the ALJs can issue orders to protect "confidential business information." *See* 19 U.S.C. § 1335 (general rulemaking authority); *id.* § 1337(n)(1)

(confidentiality protections); 19 C.F.R. § 210.34(a) (implementing regulations); Summary of Commission Practice Relating to Administrative Protective Orders, 89 Fed. Reg. 104562 (Dec. 23, 2024).

The process for remedying violations of a protective order depends on whether the initial proceeding before the ALJ is open or closed. If open, the ALJ can enforce the protective order. 19 C.F.R. § 210.25(b). If closed, the ITC can enforce it. *Id.* § 210.25(c).

In the latter instance, the ITC first opens an investigation. 89 Fed. Reg. at 104564; *An Introduction to Administrative Protective Order Practice in Import Injury Investigations*, U.S. Int'l Trade Comm'n, at 11-12 (Jan. 2022), https://perma.cc/8LX8-TU38. Then, it determines whether a violation occurred and (if so) how to penalize it. *See* 89 Fed. Reg. at 104564. The possible penalties include (1) an official reprimand, (2) disqualification from a pending investigation, (3) disqualification from all practice before the ITC, (4) referral to a licensing authority, and (5) adverse inferences against the breaching party. *See* 19 C.F.R. § 210.34(c)(3).

## A. The ITC's ALJs

For many decades, the ITC's chairman unilaterally appointed the agency's ALJs without the votes of other commissioners. But in 2018, the Supreme Court held unconstitutional the appointments of ALJs in the Securities and Exchange Commission selected by that agency's staff. *Lucia v. SEC*, 585 U.S. 237, 251-52 (2018). As the Court indicated, ALJs are "inferior Officers," which the Constitution's Appointments Clause requires be appointed by the President, the courts, or the "Head" of the "Department," *id.* at 244, 251; U.S. Const. art. II, § 2, cl. 2. At the ITC, this means the

commissioners acting collectively, not the chairman acting alone.

In anticipation of *Lucia*, the ITC ratified the chairman's prior *appointments* of ALJs. But it did not ratify the past *actions* of those ALJs. JA 227.

This case concerns one of those unratified actions.

### B. Expert Witness Gregory Sidak

In 2017, shortly before the ITC ratified the chairman's past appointments, an ALJ issued a protective order in a dispute between Qualcomm and Apple. The order required recipients of confidential business information to return or destroy that information when the case ended. Gregory Sidak testified in that case as an expert witness, and he agreed to abide by the ALJ's protective order.

Years after the Qualcomm-Apple case closed, the ITC suspected that Sidak had not complied with the protective order's document-destruction requirements. So the ITC opened an investigation.

For nine months, the ITC and Sidak exchanged several letters regarding a possible protective-order breach. The ITC directed Sidak to submit sworn affidavits addressing responsibility for the alleged breach and potential sanctions. Sidak's attorney responded with a letter disputing liability on legal grounds. The ITC then issued a second letter incorporating its prior instructions, requesting an affidavit, and warning that a failure to provide it could lead the ITC to assume facts adverse to Sidak's interests. Sidak responded to that letter with an affidavit and a second attorney's letter. When the ITC sent a third letter requiring yet more information, Sidak sued.

In his lawsuit, Sidak argued that the protective order was void because the ALJ had not been properly appointed and the order had not been later ratified by the ITC. He asked the district court to hold the protective order unenforceable and enjoin the ITC from imposing sanctions based on it.[1]

The district court permanently enjoined the ITC from using the protective order as the basis for an investigation or sanctions against Sidak.

The ITC appealed.

## II. Three Thresholds

Sidak has standing, the district court had jurisdiction, and the Constitution provides a right of action.

*First*, Sidak has Article III standing — which the ITC does not dispute. He faces a credible risk of professional sanctions arising from the ITC's investigation, which suffices to establish injury in fact. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-61 (2014) (holding that plaintiffs may establish injury where a "credible threat of enforcement" exists). That injury is traceable to the ITC's reliance on the challenged ALJ order, and an injunction would redress it by halting the investigation and barring sanctions based on the order.

---

[1] In neither the district court nor this court does the ITC dispute that the ALJ had been improperly appointed when he issued the relevant protective order, that the order has not been subsequently ratified, and that the ITC was investigating only Sidak's possible violation of the protective order, not his *agreement* to abide by the protective order.

In addition, the ITC has required Sidak to submit affidavits and warned that an incomplete response could lead to adverse inferences. Compliance with those demands costs time and money — a concrete injury redressable by an injunction against the investigation. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 152-54 (1967) (finding standing where agency action required "immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance").

*Second*, the district court had subject-matter jurisdiction. District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. And that federal-question jurisdiction extends to suits in equity challenging unlawful agency actions. *See American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 107-08 (1902); *see also Federal Express Corp. v. United States Department of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022) ("Long before the APA, the main weapon in the arsenal for attacking federal administrative action was a suit in equity seeking injunctive relief." (cleaned up)).

Sidak and the ITC argue at length about how to apply *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023). There, the FTC's and SEC's special statutory review schemes did not strip district courts of federal-question jurisdiction. *Id.* And here too, federal-question jurisdiction was not stripped by a special statutory review scheme — for the simple reason that in today's case there is no relevant, special statutory review scheme *at all*.[2]

---

[2] True, the ITC designed its own procedures for certain enforcement actions. *See* 19 C.F.R. § 210.25(a)(2), (c); *id.* § 210.34(c); 89 Fed.

*Third*, Sidak has a right of action. When an injured party seeks to enjoin an unconstitutionally structured agency acting in violation of the Appointments Clause, the party has "an implied private right of action directly under the Constitution." *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010) (cleaned up) (treating an Appointments Clause challenge no differently than other constitutional claims); *see also Axon*, 143 S. Ct. at 914 (Gorsuch, J., concurring in judgment) ("And, of course, one traditional avenue of relief is a suit in district court under § 1331 seeking to enjoin unconstitutional conduct.") (citing *Free Enterprise Fund*, 561 U.S. at 491 n.2).[3]

### III. All in the Timing

The ITC argues that Sidak's suit to enjoin its investigation is both too early and too late — too early because the ITC has not yet made a final decision about Sidak's compliance with the protective order, and too late because Sidak could have

Reg. 104562, 104563-64 (Dec. 23, 2024). But a regulation cannot divest a district court of jurisdiction. *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); *cf. City of Arlington v. FCC*, 569 U.S. 290, 319 (2013) (Roberts, C.J., dissenting) ("it is fundamental that an agency may not bootstrap itself into an area in which it has no jurisdiction" (quoting *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 650 (1990)).

[3] Courts distinguish "between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). Because Sidak argues that the ITC's investigation depends on the unratified order of an unconstitutionally appointed officer, his claim is a constitutional claim, not a statutory claim. If he were bringing a statutory claim, he would need to bring a claim either under the Administrative Procedure Act or for *ultra vires* review.

objected to the protective order when he first testified in the Qualcomm-Apple case.

## A. Too Early?

Sidak's suit is not too early — it is constitutionally and prudentially ripe for review.[4]

As a constitutional matter, ripeness requires that a case not be "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (cleaned up). While constitutional ripeness is distinct from Article III standing, in this case the two issues "boil down to the same question," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (cleaned up) — whether "judicial resolution of this dispute is premature," *Trump*, 141 S. Ct. at 536. For the same reasons that Sidak's suit against the ITC's ongoing investigation satisfies Article III's standing requirements — see Part II above — Sidak's suit satisfies Article III's ripeness requirements.

The ITC argues that even though Sidak has standing, his suit is not ripe. That argument relies on the prudential-ripeness doctrine. And though the Supreme Court has not disposed of a case purely on prudential ripeness in many years, *see Industrial Energy Consumers of America v. FERC*, 125 F.4th 1156, 1165-66 (D.C. Cir. 2025) (Henderson, J., concurring), it has also not overruled the two-part test for prudential ripeness that it

---

[4] In certain places, the ITC suggests Sidak's suit is too early not just because it is unripe but also because Sidak failed to meet an exhaustion requirement. But the ITC has identified no statute requiring exhaustion. And its occasional feinting at an exhaustion argument is insufficient to preserve any argument that one exists.

outlined in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967).

*Abbott Labs* tells us to ask two questions: whether the case raises legal questions or factual questions, and whether delay of a judicial decision would impose hardships.  *See id.*[5]

Under that test, Sidak's suit is ripe.  It presents "purely legal" questions about timeliness, forfeiture, and the protective order's enforceability, *id.*, and no "further factual development would significantly advance our ability to deal with the legal issues presented," *National Park Hospitality Association v. Department of Interior*, 538 U.S. 803, 812 (2003) (cleaned up). In addition, Sidak faces at least some hardship from being subjected to an enforcement proceeding that he claims is illegitimate, and the ITC has no "institutional interests favoring the postponement of review." *Sabre, Inc. v. Department of Transportation*, 429 F.3d 1113, 1120 (D.C. Cir. 2005); *cf. id.* (when the fitness prong is met, "a petitioner need not show that delay would impose individual hardship" unless "institutional interests favor[] the postponement of review").

The ITC raises three arguments in response.  All fail.

---

[5] Though this court has suggested in the past that a case may always be ripe for review if it satisfies the first prong, the Supreme Court has framed both prongs as necessary considerations.  *Compare Time Warner Entertainment Co. v. FCC*, 93 F.3d 957, 974 (D.C. Cir. 1996) (when the case raises purely legal questions, a court "need not consider" hardship before finding the case ripe for review) *with Texas v. United States*, 523 U.S. 296, 300-01 (1998) ("Ripeness requires us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." (cleaned up)); *see also Flynt v. Rumsfeld*, 355 F.3d 697, 702 (D.C. Cir. 2004) (quoting this standard).

First, the ITC argues that review should wait until the agency finishes its enforcement proceedings, which it says fall "well within the Commission's expertise." But this is an Appointments Clause challenge, not a dispute over how the ITC conducts enforcement. We do not need to wait for the ITC to complete the work that lies within its expertise in order to answer the Appointments Clause question, which falls outside its expertise — and well within our own. *See Carr v. Saul*, 141 S. Ct. 1352, 1360 (2021) ("agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise").

Second, the ITC argues that immediate review is inefficient and "might prove to have been unnecessary." But that is true of many cases that raise purely legal questions. And under this court's ripeness precedents, "neither the agency nor the court ha[s] a significant interest in postponing review" when "[n]o further factual development is necessary to clarify the issue." *Electric Power Supply Association v. FERC*, 391 F.3d 1255, 1263 (D.C. Cir. 2004).

Third, the ITC argues that immediate review is unavailable because it has taken no final agency action. Finality is an express requirement for judicial review under the Administrative Procedure Act, 5 U.S.C. § 704, and courts often read finality requirements into other statutory rights of action, *see Bell v. New Jersey*, 461 U.S. 773, 778 (1983). But here, Sidak relies on an implied constitutional right of action in equity, as permitted by *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010). And such rights of action have no finality requirement. *See, e.g.*, *Trudeau v. FTC*, 456 F.3d 178, 188-91 (D.C. Cir. 2006).

**B. Too Late?**

Sidak's suit is also not too late.

A challenge is timely when it complies with ordinary procedural requirements. *See Carr*, 141 S. Ct. at 1362. Those requirements can include traditional forfeiture principles and statutory exhaustion rules, as well as laches principles or any applicable statute of limitations. *See id.* (no special timeliness rules exist for Appointments Clause claims); *see also Lucia*, 585 U.S. at 251 ("one who makes a timely challenge . . . is entitled to relief" (cleaned up)). As relevant here, Sidak did not forfeit his Appointments Clause claim.

The ITC argues that Sidak forfeited his claim by testifying as a witness in the Qualcomm-Apple proceeding and signing the 2017 protective order. But Sidak had no claim of injury to bring and no forum in which to bring it until the ITC launched its investigation against him. Even assuming that Sidak could have raised his Appointments Clause challenge then, he did not need to do so. That's because "agreeing to testify is materially different from invoking a forum and affirmatively seeking a ruling from the Commission" — actions that may well require an Appointments Clause challenge to be either raised or forfeited. JA 220 (cleaned up).

That distinguishes this case from *Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157 (Fed. Cir. 2020). It asked whether a forum-invoking party can sandbag its opposing party by asking unconstitutionally appointed adjudicators for a decision and then demanding an Appointments Clause do-over if the adjudicators' decision is unfavorable — a classic heads-I-win-tails-you-lose strategy. For understandable reasons, *Ciena Corp.* held that a party forfeits its Appointments Clause

12

challenge if it "affirmatively [seeks] a ruling from the Board members" and is "content to have the assigned Board judges adjudicate its invalidity challenges until the Board rule[s] against it." *Id.* at 1159.

Here, Sidak did nothing of the sort. He neither initiated the original ITC proceeding nor sought relief from the ITC. So he cannot credibly be accused of sandbagging.[6]

The ITC mentions the de facto officer doctrine, which "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). But the Supreme Court has confined the doctrine to minor or "technical defects in title to office," rather than structural constitutional violations. *Id.* at 180, 182-83; *see also Lucia*, 585 U.S. at 251-52 (granting full relief without mentioning the de facto officer doctrine). And in any event, the doctrine protects reliance interests when a party has already litigated before an official of questionable status; it does not bar a non-party from objecting when the agency first takes action against him.

---

[6] Moreover, while relying on Sidak's status as a signatory to argue that he is covered by the protective order, the ITC has consistently maintained that the investigation to decide whether sanctions should be imposed is based solely on the legal authority of the protective order itself. In other words, the ITC has disclaimed any reliance on some separate statutory or regulatory requirement for Sidak to do something simply because he has agreed to do it.

13

\* \* \*

Our timeliness "holding is narrow." JA 227. Like the district court, we do "not hold that *parties* to administrative proceedings can belatedly attack any adverse order based on alleged defects in the adjudicator's authority." *Id.* The ITC's "timeliness and forfeiture arguments would fare much better if Sidak were a party." *Id.* But as the ITC "acknowledged at oral argument, this 'is an unusual case.' Indeed, neither side could point to a comparable one. The key features of this dispute are that Sidak was a third-party witness in the initial proceeding, and he had no obligation (nor opportunity) to earlier raise this claim in federal court." *Id.* (cleaned up).

## IV. Remedy

The ITC also argues that the district court failed to adequately weigh the equitable factors for permanent injunctive relief. But it has not demonstrated that the injunction was an abuse of the district court's discretion.

To obtain a permanent injunction, the "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). We review the district court's grant of a permanent injunction for abuse of discretion. *Id.*

The ITC could have argued that because judicial review after final agency action is an adequate remedy, Sidak cannot maintain any implied claim in equity, much less obtain the

14

extraordinary remedy of an injunction. *See*, *e.g.*, *Reisman v. Caplin*, 375 U.S. 440, 443 (1964). Then, Sidak could have responded that the ITC's investigation is an irreparable injury, analogizing it to the "here and now" injuries caused by the investigations in *Axon*. *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890, 903 (2023). And in reply, the ITC could have tried to distinguish *Axon*, where the investigations were "led by an illegitimate decisionmaker" — unlike the investigation into Sidak. *Id.*

But the ITC doesn't make that argument on appeal. Rather, its opening brief makes no mention of *eBay*'s "irreparable injury" factor outside its recitation of *eBay*'s test.

Instead, the ITC argues that an injunction is not justified by the balance of equities and "is contrary to the rights of third parties and the public interest" — skipping past *eBay*'s first and second factors and going straight to its third and fourth. Appellant Br. 51. But the ITC made no argument about *those factors* in the district court. So the ITC focuses here on what it arguably forfeited there. And in any event, any hardship to the ITC and the risk to "third parties and the public interest" is belied by the message's messenger: If the ITC's work, third parties, and the public interest really depend on the enforcement of pre-*Lucia* protective orders, the ITC could have tried — and still can try — to ratify past actions like the Qualcomm-Apple protective order. That is what other agencies did after *Lucia*, and it is what the Solicitor General advised the ITC to do. *See* JA 202-03, 202 n.1.

Finally, in addition to its unpersuasive and possibly unpreserved reliance on *eBay*'s third and fourth factors, the ITC makes a one-fell-swoop argument. Lumping all the *eBay* factors together, it says the district court did not properly explain how it weighed them — at the end of a thorough and

thoughtful opinion that was already 28 pages long.[7]  But the court did not abuse its discretion.  Rather, it amply explained its view that an injunction was the appropriate remedy for an Appointments Clause violation that the ITC does not even contest.  *See* JA 226 ("the Supreme Court has established remedies with bite for Appointments Clause violations" (quoting *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022)); JA 227 ("If any broader reliance interests are affected in this case, the Commission is to blame.").  Beyond that, district courts are not administrative agencies with a burden imposed by the Administrative Procedure Act to explain their decisions in a manner the reviewing court finds reasonable.  On appeal, it is the appellant's burden to make a winning, preserved argument that the district court erred.

The ITC has not done that in this case.

\* \* \*

For these reasons, we affirm the judgment of the district court.

*So ordered.*

---

[7] *Cf.* JA 115 (ITC asserting to the district court, in a single sentence, tucked into a footnote, that Sidak "has not established any irreparable injury").