# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――――

Argued February 11, 2008        Decided March 21, 2008

No. 06-1386

ST. JOHN'S UNITED CHURCH OF CHRIST, ET AL.,
PETITIONERS

v.

FEDERAL AVIATION ADMINISTRATION AND MARION C.
BLAKELY, ADMINISTRATOR,
RESPONDENTS

CITY OF CHICAGO,
INTERVENOR FOR RESPONDENT

―――――

On Petition for Review of an Order of the
Federal Aviation Administration

―――――

*Joseph V. Karaganis* argued the cause for petitioners. With him on the briefs were *A. Bruce White*, *John W. Kalich*, *Robert E. Cohn*, and *Christopher T. Handman*.

*M. Alice Thurston*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief was *Todd S. Aagaard*, Attorney. *Lisa E. Jones* and *John A. Bryson*, Attorneys, entered appearances.

*Benna Ruth Solomon*, Deputy Corporation Counsel, Corporation Counsel of the City of Chicago, argued the cause for intervenor. With her on the brief were *Christopher M. Grunewald*, Assistant Corporation Counsel, and *Sean H. Donahue*, *David T. Goldberg*, and *Michael G. Schneiderman*.

Before: ROGERS, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Petitioners seek review of the Federal Aviation Administration's (FAA's) grant of money to the City of Chicago, reimbursing costs of certain work performed as part of the City's expansion of O'Hare International Airport. We dismiss the petition for lack of standing.

I

Chicago plans on acquiring land in nearby Elk Grove Village and the Village of Bensenville for the expansion of O'Hare Airport. Petitioner Bensenville complains Chicago's acquisition will destroy its parkland and affordable housing while petitioner Elk Grove complains the acquisition will destroy many businesses and deprive it of tax revenue and other economic benefits. In addition, one of the project's runways will require Chicago to "relocate" St. Johannes Cemetery—a disturbance which petitioners St. John's United Church of Christ, Helen Runge, and Shirley Steele claim will substantially burden their religious exercise.

In an earlier case, the petitioners challenged the FAA's approval of the project's airport layout plan (ALP)—an order the FAA calls the "Record of Decision" (ROD)—and the FAA's letter of intent (LOI). *Vill. of Bensenville v. FAA*, 457 F.3d 52 (D.C. Cir. 2006). The LOI established a 15-year

schedule under which the FAA will reimburse Chicago for the Government's share of project costs, and stated the government's intention to obligate from future budget authority a maximum of $337 million, paid by annual grants of $20 to $29 million. Before issuing the LOI, the FAA considered whether the O'Hare project met the requirements for airport improvement project (AIP) grants. Analysis and Review of City of Chicago's Application for Letter of Intent AGL 06-01, at 8–9 (Nov. 18, 2005), 10 J.A. 5451–52. But "final application" of those requirements would occur when FAA made "a final decision on the award of a specific amount of funding." *Id.*

We dismissed petitioners' challenges to these findings, holding the LOI unreviewable because it was not an "order" under 49 U.S.C. § 46110(a).[1] The LOI was not an order because it was not final. The LOI did not obligate the government to pay the grants; Chicago still had to apply each year, and Congress still had to appropriate the money. *Vill. of Bensenville*, 457 F.3d at 68–69. In any event, petitioners lacked standing because vacating the LOI would not redress their injuries. Chicago could complete the project even without the $337 million—a mere fraction of the costs of the project. *Id.* at 69–70.

Chicago applied for the first annual grant in the middle of 2006. In September 2006, Chicago accepted FAA's offer of $29.3 million to reimburse Chicago for certain work performed on land not affecting the petitioners. The two concluded a standard grant agreement containing various condi-

---

[1] We also rejected the petitioners' challenges to certain determinations in the ROD, and their claim that FAA's approval of the ALP violated the Religious Freedom and Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq*. *Vill. of Bensenville*, 457 F.3d at 65, 70–72.

tions, among which Chicago must "complete all AIP funded projects without undue delays and in accordance with the terms" of the grant and FAA regulations. Terms and Conditions of Accepting Airport Improvement Grants 8 (June 2005), 10 J.A. 5692. About a year later, the FAA authorized Chicago to collect $1.3 billion in passenger facilities charges (PFC's) to help finance the O'Hare project. Notice of Passenger Facility Charge (PFC) Approvals and Disapprovals, 72 Fed. Reg. 61,204, 61,205–06 (Oct. 29, 2007).

Petitioners seek review of the single $29.3 million AIP grant. They claim that certain FAA determinations were flawed, and that the FAA violated RFRA.

## II

To establish Article III standing, petitioners must show a "substantial probability" they have been injured, the FAA's grant to Chicago caused their injuries, and the court could redress those injuries. *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002). Because FAA's $29.3 million grant reimburses Chicago for completed work that did not affect the petitioners, how the grant causes their injuries is a mystery. Perhaps realizing this, petitioners try to characterize the order they challenge as "more than $2 billion in federally approved funding assistance." Petr.'s Br. 21. To reach this figure, petitioners add the $337 million LOI and the $1.3 billion in PFC's. They also add federal funding they expect Chicago will seek because of a $400 million cost overrun.

"It's clear," say petitioners, "Chicago cannot construct the [project] … without massive AIP and PFC financial assistance." *Id.* at 20–21. There is, however, nothing "clear" about this. The LOI is not before the court. Chicago's acceptance of the first of the LOI's fifteen grants, does not authorize review of the fourteen grants the FAA has not yet offered.

Nor is the $1.3 billion in PFC's before the court.[2] Petitioners think otherwise because the determinations FAA made in awarding the AIP grant here are supposedly the same ones FAA makes when authorizing Chicago to collect PFC's. But the determinations are not the same. While a project is eligible for PFC funding when the project is for "airport development or airport planning," as the AIP statute uses those terms, the project need not meet the same standards for approving an AIP grant. *Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 9 (D.C. Cir. 1999). Thus, an FAA order stating "AIP and PFC eligibility of projects is identical" does not support the petitioners. *See* Passenger Facility Charge, FAA Order 5500.1, at 51 (Aug. 9, 2001). That phrase simply means a project meeting the definition of "airport development or airport planning" is eligible for PFC funding.

Next, petitioners assert the grant agreement between FAA and Chicago "contains an FAA-imposed clause that compels Chicago to complete the [project] (necessarily destroying St. Johannes … and parklands, homes and businesses in Bensenville and Elk Grove Village)." Petr.'s Br. 21. Petitioners apparently focus on the following grant condition: Chicago "shall carry out and complete all AIP funded projects without undue delays." But the "[f]ailure to comply with grant conditions" can result only "in suspension or termination of the grant." Airport Improvement Program Handbook, FAA Order 5100.38C, at 208 (June 28, 2005). FAA cannot "compel" Chicago to complete the O'Hare project. Nor does Chicago need any compelling. Chicago designed the plan for the project; it submitted that plan to the FAA and fought for its approval. *Vill. of Bensenville*, 457 F.3d at 65. Chicago will provide most of the funding and is prepared to obtain funding from other sources if federal money is unavailable.

---

[2] And needless to say, FAA funding the petitioners speculate Chicago will seek is not now at issue.

*Id.* So even if the FAA could compel Chicago to complete the project, vacating the grant condition would not redress the petitioners' injuries because Chicago is committed to completing the project anyway.

In addition, the court has already concluded that vacating the $337 million in the LOI would not redress petitioners' injuries because federal money plays a "minor role" and Chicago could replace it with other sources of funding. That conclusion alone seems to sink the petitioners' challenge to the $29.3 million grant. However, petitioners argue that redressability conditions have changed because of a $400 million cost overrun and the majority-in-interest airlines refusing Chicago's request to issue more bonds. Thus, according to petitioners, if the court overturns AIP and PFC funding, Chicago can no longer replace that funding. Petitioners again err by adding the PFC authorization and the LOI to the single AIP grant they challenge here. Moreover, they have not shown a "substantial probability" that Chicago would scrap the O'Hare project if the court vacated the $29.3 million grant.

Petitioners claim they need not demonstrate such "high probability" of redressability because 49 U.S.C. § 46110(a) and RFRA gives them a "procedural right" to protect their interests, which they may assert "without meeting all the normal standards for redressability and immediacy," *Massachusetts v. EPA*, 127 S. Ct. 1438, 1453 (2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 n.7 (1992)). However, that rule applies only when a party challenging an agency's procedural failure cannot "establish with any certainty" that the *agency* would reach a different decision. *Lujan*, 504 U.S. at 573 n.7; *see also Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996). But the redressability obstacle the petitioners face is uncertainty over what *Chicago* would do—not the FAA. Thus, the petitioners must

satisfy the normal standard for redressability. They have not. "[I]t is entirely conjectural whether the nonagency activity that affects [petitioners] will be altered or affected by the agency activity they seek to" overturn. *Lujan*, 504 U.S. at 571 (plurality opinion).

## III

Petitioners have not shown that the single $29.3 million grant has caused their injuries, or that the court can redress those injuries. We therefore dismiss their petition for lack of standing.

*So ordered.*