**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CREIGHTON MELAND,
*Plaintiff-Appellant*,

v.

SHIRLEY N. WEBER,[*] Secretary of State of California, in her official capacity as Secretary of State of the State of California,
*Defendant-Appellee.*

No. 20-15762

D.C. No.
2:19-cv-02288-JAM-AC

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted March 10, 2021
San Francisco, California

Filed June 21, 2021

Before: M. Margaret McKeown, Sandra S. Ikuta, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Ikuta

---

[*] Shirley Weber has been substituted for her predecessor, Alex Padilla, as Secretary of State of California under Fed. R. App. P 43(c)(2).

## SUMMARY[**]

### Civil Rights

The panel reversed the district court's dismissal for lack of standing of an action brought by a corporate shareholder challenging the constitutionality of California Senate Bill 826, which requires all public corporations headquartered in California to have a minimum number of females on their boards of directors.

Plaintiff alleged that Senate Bill 826 (SB 826) requires shareholders to discriminate on the basis of sex when exercising their corporate voting rights, in violation of the Fourteenth Amendment. The panel held that plaintiff plausibly alleged that SB 826 requires or encourages him to discriminate based on sex. Plaintiff therefore adequately alleged an injury in fact, the only Article III standing element at issue, and thus had Article III standing to challenge SB 826. Plaintiff's alleged injury was also distinct from any injury to the corporation, and he could bring his own Fourteenth Amendment challenge. Thus, plaintiff had prudential standing to challenge SB 826. Finally, plaintiff's injury was ongoing and neither speculative or hypothetical, and the district court could grant meaningful relief. This case was therefore ripe and not moot.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Anastasia P. Boden (argued), Joshua P. Thompson, and Daniel M. Ortner, Pacific Legal Foundation, Sacramento, California, for Plaintiff-Appellant.

Lara Haddad (argued), Deputy Attorney General; Mark R. Beckington, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Attorney General's Office, Los Angeles, California; for Defendant-Appellee.

Christina Sandefur, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Arizona, for Amicus Curiae Goldwater Institute.

Thomas R. McCarthy and Tiffany H. Bates, Consovoy McCarthy PLLC, Arlington, Virginia, for Amicus Curiae Philanthropy Roundtable.

Melissa A. Holyoak and Anna St. John, Hamilton Lincoln Law Institute, Washington, D.C., for Amicus Curiae Hamilton Lincoln Law Institute.

Jonathan F. Mitchell, Mitchell Law PLLC, Austin, Texas; Daniel I. Morenoff, Equal Voting Rights Institute, Dallas, Texas; for Amicus Curiae Linda Chavez.

Amanda Narog, Bopp Law Firm, Terre Haute, Indiana; Jennifer C. Braceras, Independent Women's Law Center, Winchester, Virginia; for Amicus Curiae Independent Women's Law Center.

## OPINION

IKUTA, Circuit Judge:

California Senate Bill 826 (SB 826) requires all corporations headquartered in California to have a minimum number of females on their boards of directors. Corporations that do not comply with SB 826 may be subject to monetary penalties. The shareholders of OSI Systems, Inc., a corporation covered by SB 826, elect members of the board of directors. One shareholder of OSI, Creighton Meland, brought an action challenging the constitutionality of SB 826 on the ground that it requires shareholders to discriminate on the basis of sex when exercising their voting rights, in violation of the Fourteenth Amendment. We hold that because Meland has plausibly alleged that SB 826 requires or encourages him to discriminate on the basis of sex, he has adequately alleged that he has standing to challenge SB 826's constitutionality. *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 707 (9th Cir. 1997).

I

A

The California Legislature enacted SB 826 in 2018.[1] According to the legislative findings, "[i]f measures are not taken to proactively increase the numbers of women serving on corporate boards, studies have shown that it will take decades, as many as 40 or 50 years, to achieve gender parity among directors." S.B. 826(1)(f), 2017-2018 Leg., Reg. Sess.

---

[1] SB 826 added sections 301.3 and 2115.5 to the California Corporations Code. The text of these sections is set forth in the Appendix.

(Cal. 2018). To address this, the California Legislature mandated that public corporations with principal executive offices located in California appoint a certain number of female directors to their boards. SB 826 defines a "female" as "an individual who self-identifies her gender as a woman, without regard to the individual's designated sex at birth." Cal. Corp. Code § 301.3(f)(1).

By the end of 2019, a covered corporation must have "a minimum of one female director on its board." *Id.* § 301.3(a). By the end of 2021, any covered corporation with six or more directors must have at least three female directors, any covered corporation with five directors must have at least two female directors, and any covered corporation with four or fewer directors must have at least one female director. *Id.* § 301.3(b)(1)–(3). SB 826 also imposes reporting requirements, including requiring the Secretary of State to publish reports showing which corporations are in compliance with the law. *Id.* § 301.3(d)(1).

To enforce SB 826, the law authorizes the Secretary of State to impose fines for violations, ranging from $100,000 to $300,000 per violation. *Id.* § 301.3(e)(1)(A)–(C). Each director seat required to be held by a female, which is not held by a female, counts as a violation. *Id.* § 301.3(e)(2). To date, the Secretary of State has not enacted regulations or imposed fines.

B

Creighton Meland, Jr. is a shareholder of OSI Systems, Inc. (OSI). Because OSI is a publicly traded company with headquarters in California, it is subject to SB 826. The shareholders of OSI, including Meland, are responsible for

selecting the corporation's directors by voting for directors at annual meetings. *See, e.g.*, *id.* § 600(b). OSI's nominating committee, as well as individual shareholders or groups of shareholders, may recommend candidates or submit names of candidates for election to OSI's board of directors. To become a member of OSI's board, however, a candidate must receive a plurality of shareholder votes.

In November 2019, Meland sued California's Secretary of State, alleging that SB 826 discriminates on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment and "seeks to force shareholders to perpetuate sex-based discrimination." The complaint alleged that because OSI had seven male board members, SB 826 required OSI to add one female board member by the end of 2019 and two additional female board members by the end of 2021. The complaint also alleged that Meland intended to vote on board-member nominees in the December 2019 annual shareholder meeting and at subsequent meetings. Meland sought declaratory relief, injunctive relief, and attorneys' fees and costs.

At the December 2019 annual shareholder meeting, OSI shareholders elected a female to fill a vacant board-member seat. The state then moved to dismiss Meland's complaint for lack of Article III standing. The district court granted the state's motion, reasoning that Meland had not suffered an injury in fact, because SB 826 imposed requirements and potential penalties on corporations, not shareholders. Moreover, the district court held that SB 826 did not prevent Meland from voting for a male director. And the district court concluded that, even assuming Meland had established an individualized injury, his injury was not actual or imminent, because OSI was in compliance with SB 826.

Finally, the district court held that Meland did not have prudential shareholder standing, because he had not suffered a direct injury separate from any injury to OSI. Meland timely appealed.

C

The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We "review de novo an order granting a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and construe all material allegations of fact in the complaint in favor of the plaintiff." *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 416–17 (9th Cir. 2020). "The party invoking federal jurisdiction bears the burden of establishing" the elements of standing, and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* In its motion to dismiss Meland's complaint under Rule 12(b)(1), the state made a facial challenge, meaning it "accept[ed] the truth of the plaintiff's allegations but assert[ed] that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (cleaned up).

II

A

The key question before us is whether Meland has adequately alleged that he has Article III standing to challenge the constitutionality of SB 826. To have standing, the party invoking federal jurisdiction must allege "a case or controversy within the meaning of Art. III of the Constitution." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979).

Here, Meland bears the burden of establishing the three "irreducible" elements of Article III standing. *Lujan*, 504 U.S. at 560. The "first and foremost of standing's three elements," and the only element at issue here, is that the plaintiff has suffered "an injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (cleaned up). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). For an injury to be actual or imminent, the "threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). "Allegations of possible future injury are not sufficient." *Id.* (cleaned up).

To confer standing under Article III, an injury in fact must "affect the plaintiff in a personal and individual way," *Spokeo*, 136 S. Ct. at 1548 (citation omitted), that is beyond "the psychological consequence presumably produced by observation of conduct with which one disagrees," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982). Although

this means that an "abstract, generalized grievance" is insufficient to confer standing, *Buono v. Norton*, 371 F.3d 543, 547 (9th Cir. 2004), a person may suffer a concrete, personalized injury stemming from noneconomic harm, *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154 (1970); *see also Valley Forge*, 454 U.S. at 486 ("[W]e do not retreat from our earlier holdings that standing may be predicated on noneconomic injury.").

Consistent with these standing principles, we have long held that "[a] person required by the government to discriminate by ethnicity or sex against others has standing to challenge the validity of the requirement, even though the government does not discriminate against him." *Monterey Mech.*, 125 F.3d at 707. In *Monterey Mechanical*, a contractor submitted the low bid on a construction project for a state university. *Id.* at 704. Despite submitting the low bid, the contractor did not get the job, because it did not comply with a state statute requiring general contractors "to subcontract percentages of the work to minority, women, and disabled veteran owned subcontractors, or demonstrate good faith efforts to do so." *Id.* The contractor sued the university's trustees on the ground that the statute violated the Equal Protection Clause. *Id.* at 705. We held that the contractor had standing because, among other reasons, a plaintiff suffers a personal injury sufficient to confer standing when the government "requires or encourages" the plaintiff to discriminate against others. *Id.* at 707. Because "Americans view ethnic or sex discrimination as 'odious,'" *id.* (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 214 (1995)), and because "discrimination is wrong even if the beneficiaries are members of groups whose fortunes we would like to advance," we concluded that a plaintiff "is hurt by a law requiring it to discriminate, or try to discriminate,

against others on the basis of their ethnicity or sex," *id.* at 707–08.

We have subsequently relied on *Monterey Mechanical*'s determination that a person required or encouraged to discriminate on the basis of a protected class, "even if the beneficiaries [of the discrimination] are members of groups whose fortunes we would like to advance," *id.* at 708, has suffered a direct personal injury sufficient to confer standing. In *RK Ventures, Inc. v. City of Seattle*, for example, we held that the principal owners and shareholders of a corporation that owned a nightclub had standing to sue Seattle because, among other reasons, Seattle's "efforts were aimed at forcing [them] to discriminate against members of [a] protected class." 307 F.3d 1045, 1056–57 (9th Cir. 2002); *see also Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 797–98 (9th Cir. 2001) (holding that landlords had standing to challenge a city ordinance that allegedly compelled them to violate their tenants' Fourth Amendment rights).

Other circuits have cited *Monterey Mechanical* with approval. *See, e.g.*, *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 191 F.3d 675, 689 (6th Cir. 1999) (quoting *Monterey Mechanical* for the proposition that "[a] person required by the government to discriminate by ethnicity or sex against others has standing to challenge the validity of the requirement, even though the government does not discriminate against him"); *Lutheran Church-Mo. Synod v. FCC*, 141 F.3d 344, 350 (D.C. Cir. 1998) (holding that "forced discrimination may itself be an injury" and quoting *Monterey Mechanical* for the proposition that "[a] person suffers injury in fact if the government requires or encourages

as a condition of granting him a benefit that he discriminate against others based on their race or sex").

Therefore, if Meland's allegations that SB 826 "requires or encourages" him to discriminate on the basis of sex are plausible, then he has suffered a concrete personal injury sufficient to confer Article III standing.

## B

California claims that Meland's allegations are not plausible, primarily because corporations, not their shareholders, are the objects of SB 826. California points out that on its face, SB 826 imposes requirements on specified corporations, not on shareholders. Therefore, California argues, Meland has not suffered a concrete, personal injury.

We disagree, because shareholders are one of the objects of SB 826 and therefore have standing to challenge it. In determining whether a plaintiff is the object of a government enactment, courts consider the purpose of the government enactment and its practical effect. For instance, where a rule had the practical effect of requiring truck drivers to install onboard devices that would monitor their conduct, the Seventh Circuit concluded that the truck drivers had standing to challenge the rule, even though on its face the rule regulated only motor carriers. *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 585–86 (7th Cir. 2011); *see also Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009) (holding that "when an agency adopts a rule with the purpose and substantially probable effect" of hindering a particular party, that party "ordinarily will have standing to challenge the rule"). When a plaintiff is the actual object of the

government's regulation, then "there is ordinarily little question that the action or inaction has caused him injury," *Lujan*, 504 U.S. at 561–62, regardless whether the regulation identifies the plaintiff by name.

Here, corporate shareholders are an object of SB 826. As a general rule, shareholders are responsible for electing directors at their annual meetings. *E.g.*, Cal. Corp. Code §§ 301(a), 600(b). OSI is no exception. Thus, the only way a person can be elected to OSI's board is if a plurality of shareholders vote in favor of the nominee at an annual shareholder meeting. OSI itself has no authority to elect its own board members. For SB 826 to hasten the achievement of gender parity—or indeed, for SB 826 to have any effect at all—it must therefore compel shareholders to act. Accordingly, the California Legislature necessarily intended for SB 826 to require (or at least encourage) shareholders to vote in a manner that would achieve this goal.

California next argues that even if shareholders must act to nominate directors, nothing in SB 826 requires any individual shareholder to vote for a female nominee.[2] This

---

[2] California also suggests that SB 826 does not require Meland to make a discriminatory decision because board candidates are typically nominated by OSI's nominating committee, and the committee will ensure that the slate of candidates complies with SB 826. At this juncture, however, we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). The complaint does not allege that OSI's nominating committee has exclusive control over the slate of board candidates or that the number of candidates included in the slate always matches the number of available board seats. To the contrary, Meland alleges that shareholders, or groups of shareholders, may submit names of candidates for election to the board, an allegation that undermines California's suggestion. Accordingly, we do not consider

argument fails, because SB 826 necessarily requires or encourages individual shareholders to vote for female board members. A reasonable shareholder deciding how to vote could not assume that other shareholders would vote to elect the requisite number of female board members. Therefore, each shareholder would understand that a failure to vote for a female would contribute to the risk of putting the corporation in violation of state law and exposing it to sanctions. At a minimum, therefore, SB 826 would encourage a reasonable shareholder to vote in a way that would support corporate compliance with legal requirements. Indeed, the California Legislature must have concluded that SB 826 would have such an effect on individual shareholders; otherwise, if each individual shareholder felt free to vote for a male board member, SB 826 could not achieve its goal of reaching gender parity. And the legislative conclusion that most shareholders would comply with SB 826's mandate was reasonable, as early results have shown.[3] In short, "it strikes us as odd that" the California Legislature enacted coercive legislation to achieve gender parity, "but at the same time it is asserting that these rules are not meant to change [any shareholder's] immediate behavior enough to confer standing

---

California's argument, which is unsupported by the pleadings, at this stage of the proceedings.

[3] *See, e.g.*, Allison Levitsky, *Women Now Hold More Than 1 in 4 Public Company Board Seats in California*, Silicon Valley Business Journal (May 4, 2021), https://www.bizjournals.com/sanjose/news/2021/05/04/women-sb-826.html ("Women now hold 26.5% of public company board seats in California, a direct result of a law passed in 2018—Senate Bill 826—that has nearly quadrupled the rate of companies adding women to their boards, according to a new report from the California Partners Project.").

to challenge" the law.  *Owner-Operator Indep. Drivers Ass'n, Inc.*, 656 F.3d at 586.

California's argument that SB 826 does not require a shareholder to discriminate, because the law does not impose monetary sanctions directly on shareholders, also fails.  A law may require or encourage action whether or not it imposes a monetary sanction for noncompliance.  Indeed, "it would strain credulity" to hold that a government enactment requiring a regulated entity to change its practices "does not require action immediately enough to constitute an injury-in-fact," whether or not a monetary sanction is imposed*.  Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 448 (5th Cir. 2019).  Again, the state Legislature must have concluded that imposing sanctions on corporations would require—or at least encourage—shareholders to vote for female nominees; otherwise, the enactment would have been futile.  One reason imposing monetary sanctions on a corporation may coerce shareholders is because such sanctions affect a shareholder's ownership interest in the corporation.  *See Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990) (holding that parent corporations (i.e., shareholders) may have Article III standing to challenge taxes imposed on subsidiaries, because "[i]f those taxes are higher than the law of the land allows, that method threatens to cause actual financial injury" to the shareholders "by illegally reducing the return on their investments [in the subsidiaries] and by lowering the value of their stockholdings").[4]

---

[4] SB 826 pressures shareholders in other ways as well.  Meland alleges that SB 826 also enforces its requirements through "public shaming" by requiring the California Secretary of State to publish lists of

We conclude that as a shareholder of OSI, Meland is subject to the coercive effect of SB 826. In order to keep OSI in compliance with California law and avoid potential monetary sanctions (and alleged public shaming), Meland has alleged that he is required or encouraged to make discriminatory decisions in voting for board members. *See Monterey Mech.*, 125 F.3d at 707. As Meland put it in his complaint, if SB 826 is declared unconstitutional and the state is enjoined from enforcing it, then Meland "would no longer have to worry that he might subject OSI to fines unless he considers sex when selecting a board member." Alleging this kind of injury is "all that is required for Article III standing." *Alcan Aluminium Ltd.*, 493 U.S. at 336. Therefore, construing "all material allegations of fact in the complaint in favor of the plaintiff," *Southcentral Found.*, 983 F.3d at 416–17, we hold that Meland has adequately alleged that he has Article III standing here.

## III

We now turn to California's argument that Meland's § 1983 claim was properly dismissed because, under state law, he has brought a derivative shareholder claim and lacks prudential standing as a matter of federal law.

Under the Supreme Court's prudential standing rule, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Alcan Aluminium Ltd.*, 493 U.S.

compliant and noncompliant corporations. *See* Cal. Corp. Code § 301.3(c)–(d).

at 336 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).**[5]**
In the corporate context, "shareholders do not have standing
to assert the claims of the corporation, unless they do so
through derivative actions." *Coto Settlement v. Eisenberg*,
593 F.3d 1031, 1037 (9th Cir. 2010). If a shareholder has "a
direct, personal interest" in his cause of action, however, then
the claim is not derivative and thus there are no prudential
standing concerns. *Alcan Aluminium Ltd.*, 493 U.S.
at 336–37.

To determine whether a plaintiff's claim is direct or
derivative, we apply the law of the state of incorporation,
*Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000), because
the "presumption that state law should be incorporated into
federal common law is particularly strong" in the corporate
context, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98
(1991). OSI is incorporated in Delaware. Under Delaware
law, whether an action is direct or derivative depends on
"whether the stockholder has demonstrated that he or she has
suffered an injury that is not dependent on an injury to the
corporation." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031, 1036 (Del. 2004).

Meland's action is direct, and therefore he has prudential
standing to bring his claims, because Meland alleges that he
has been personally injured by an allegedly unconstitutional

---

**[5]** In recent years, the Supreme Court has cast some doubt on
prudential standing rules as being "in some tension" with a federal court's
"virtually unflagging" obligation to "hear and decide cases within its
jurisdiction." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118, 126 (2014) (cleaned up). But *Lexmark* did not address third
party standing, which "continues to remain in the realm of prudential
standing." *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1118 n.9 (9th
Cir. 2015).

law. *See Monterey Mech.*, 125 F.3d at 707. Meland asserts his own rights, not the rights of OSI, because he alleges that SB 826 requires or encourages him "to discriminate against other persons" in violation of the Fourteenth Amendment. *See id.* at 708. And the injury that Meland alleges is not "dependent on an injury" to OSI, because Meland has not alleged an injury to OSI. In a similar context, we held that principal owners and shareholders who were compelled to discriminate on the basis of race had prudential standing to bring a § 1983 action raising Fourteenth Amendment claims (among others) on their own behalf. *See RK Ventures*, 307 F.3d at 1057.

The state claims that Meland lacks prudential standing because he is alleging a harm to OSI based on fines that may be imposed on OSI if OSI fails to comply with SB 826 in the future. But Meland's complaint does not allege that SB 826 violates the constitutional rights of OSI. Nor does Meland allege that OSI has been injured by SB 826. Rather, Meland alleges that SB 826 seeks to force him, as a shareholder, "to perpetuate sex-based discrimination." Thus, because Meland rests his right to relief on an injury to himself rather than OSI, his claim is direct rather than derivative, and there are no prudential standing concerns under federal or state law.[6] *See Tooley*, 845 A.2d at 1035–36.

IV

Finally, we reject the state's alternative grounds for affirmance, not addressed by the district court, that this case

---

[6] We do not address at this stage whether Meland has alleged a cognizable constitutional claim. That issue is for the district court on remand.

is unripe and moot. "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (citation and internal quotation marks omitted). Ripeness and mootness both consider whether a plaintiff meets this standing requirement at all points during the litigation; indeed, both have been referred to as "standing on a timeline." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). "The central concern of the ripeness inquiry is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Richardson v. City & County of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (cleaned up). The central question for mootness is "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (citation omitted). Plaintiffs bear the burden of proving that their claim is ripe, *see Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009), and defendants bear the burden of establishing that a case is moot,[7] *Lohn*, 511 F.3d at 963.

---

[7] The state also argues that this case is moot under the doctrine of prudential mootness, meaning that the case may become moot in the future even if it is not technically moot at this time. In light of a federal court's "virtually unflagging" obligation to "hear and decide cases within its jurisdiction," *Lexmark*, 572 U.S. at 126 (quotations omitted), we decline to dismiss a live controversy as moot because it could become so in the future. *Cf. Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (noting that "some of our sister circuits" have adopted the doctrine of prudential mootness but declining to apply it).

There is no ripeness or mootness issue here, because Meland's injury is not "conjectural or hypothetical," *Lujan*, 504 U.S. at 560 (quotations omitted), and a ruling in Meland's favor can give him meaningful relief. Meland's alleged injury, as recognized by *Monterey Mechanical* and *RK Ventures*, is being subjected to a law that requires or encourages him to discriminate based on sex. That injury is ongoing, because OSI's shareholders are responsible for electing directors at each annual meeting, Cal. Corp. Code §§ 301(a), 600(b), and SB 826 continues to require or encourage them to vote in a discriminatory manner in order to meet the escalating female-director quota. *Id.* § 301.3(b)(1)–(3). Therefore, Meland will "suffer hardship"—that is, he will continue to be required or encouraged to discriminate on the basis of sex—if the district court "decline[s] to consider the issues." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). Because Meland will continue to suffer the alleged violation of his individual rights, we reject the state's argument that this case is moot because OSI is currently in compliance with SB 826. Meland's requested relief would end the requirement or encouragement to vote in a discriminatory manner, and thus "effective relief can be granted." *W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (citation omitted).

\*\*\*

Because Meland has plausibly alleged that SB 826 requires or encourages him to discriminate based on sex, Meland has adequately alleged an injury in fact, the only Article III standing element at issue, and thus has Article III standing to challenge SB 826. Meland's alleged injury is also

distinct from any injury to OSI, and he can bring his own Fourteenth Amendment challenge. Thus, Meland has prudential standing to challenge SB 826. Finally, Meland's injury is ongoing and neither speculative or hypothetical, and the district court can grant meaningful relief. This case is therefore ripe and not moot.

**REVERSED.**

Appendix

SB 826 added sections 301.3 and 2115.5 to the California Corporations Code.  Section 301.3 reads:

(a) No later than the close of the 2019 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California shall have a minimum of one female director on its board.  A corporation may increase the number of directors on its board to comply with this section.

(b) No later than the close of the 2021 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California shall comply with the following:

(1) If its number of directors is six or more, the corporation shall have a minimum of three female directors.

(2) If its number of directors is five, the corporation shall have a minimum of two female directors.

(3) If its number of directors is four or fewer, the corporation shall have a minimum of one female director.

(c) No later than July 1, 2019, the Secretary of State shall publish a report on its internet website documenting the number of domestic and foreign corporations whose principal executive offices, according to the corporation's SEC 10-K form, are located in California and who have at least one female director.

(d) No later than March 1, 2020, and annually thereafter, the Secretary of State shall publish a report on its internet website regarding, at a minimum, information required by subdivision (c) of Section 301.4 and all of the following:

(1) The number of corporations subject to this section that were in compliance with the requirements of this section during at least one point during the preceding calendar year.

(2) The number of publicly held corporations that moved their United States headquarters to California from another state or out of California into another state during the preceding calendar year.

(3) The number of publicly held corporations that were subject to this section during the preceding year, but are no longer publicly traded.

(e)(1) The Secretary of State may adopt regulations to implement this section. The Secretary of State may impose fines for violations of this section as follows:

(A) For failure to timely file board member information with the Secretary of State pursuant to a regulation adopted pursuant to this paragraph, the amount of one hundred thousand dollars ($100,000).

(B) For a first violation, the amount of one hundred thousand dollars ($100,000).

(c) For a second or subsequent violation, the amount of three hundred thousand dollars ($300,000).

(2) For the purposes of this subdivision, each director seat required by this section to be held by a female, which is not held by a female during at least a portion of a calendar year, shall count as a violation.

(3) For purposes of this subdivision, a female director having held a seat for at least a portion of the year shall not be a violation.

(4) Fines collected pursuant to this section shall be available, upon appropriation by the Legislature, for use by the Secretary of State to offset the cost of administering this section.

(f) For purposes of this section, the following definitions apply:

(1) "Female" means an individual who self-identifies her gender as a woman, without regard to the individual's designated sex at birth.

(2) "Publicly held corporation" means a corporation with outstanding shares listed on a major United States stock exchange.

Cal. Corp. Code § 301.3.

Section 2115.5 reads:

(a) Section 301.3 shall apply to a foreign corporation that is a publicly held corporation to the exclusion of the law of the jurisdiction in which the foreign corporation is incorporated.

(b) For purposes of this section, a "publicly held corporation" means a foreign corporation with outstanding shares listed on a major United States stock exchange.

*Id.* § 2115.5.